OA 91 Criminal Complaint

# United States District Court

NORTHERN ____ DISTRICT OF ____ CALIFORNIA

UNITED STATES OF AMERICA
V.
MELVIN PARKER, JR.

**FILED**
SEP 17 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CRIMINAL COMPLAINT

Case Number: 3 07 70545

EDL

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about 6/28/07 and continuing through on or about 8/9/07 (Date) in Contra Costa and Marin County, in the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

knowingly, in and affecting interstate or foreign commerce, recruit, entice, harbor, transport, provide, or obtain by any means, a person knowing the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

Maximum Penalties: Class C Felony: MANDATORY MINIMUM of 10 years imprisonment, maximum of life imprisonment; fine of up to $250,000; Supervised Release of Not Less Than 5 years or Life; Mandatory Special Assessment of $100.

in violation of Title 18 United States Code, Section(s) 1591.

I further state that I am a(n) Special Agent with FBI and that this complaint is based on the following facts:
Official Title

Please see attached Affidavit of Special Agent Martha Parker, which is incorporated herein.

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form: Denise Marie Barton _Denise N Barton_
AUSA

_[signature]_
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

_September 17, 2007_   at   San Francisco, CA
Date                                City and State

Honorable Elizabeth D. Laporte   United States Magistrate Judge
Name & Title of Judicial Officer

_[signature] Elizabeth Laporte_
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Martha E. Parker, being duly sworn, depose and state the following:

### I.    INTRODUCTION AND PURPOSE OF AFFIDAVIT

1.    This affidavit is submitted in support of a criminal complaint and arrest warrant for Melvin Parker, Jr. for a violation of Title 18, United States Code, Section 1591, Sex Trafficking of Children.

### II.    AFFIANT'S BACKGROUND & EXPERTISE

2.    I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the San Francisco Field Office in San Francisco, California. I have been employed as a Special Agent of the FBI since January, 1999. Since joining the FBI, I have investigated violations of federal law in violent crimes, and am currently the Crimes Against Children coordinator for the Oakland Resident Agency. I primarily investigate federal violations concerning the sexual exploitation of children, including kidnaping, child sex tourism and child prostitution. I have gathered experience in the area of criminal sexual exploitation of children through my own investigations, training, and conversations with other FBI agents and law enforcement officers.

3.    In connection with my official duties, I have obtained facts for this case from my own investigation, San Rafael Police Department officers, and other law enforcement officers. Not all facts known to me are contained within this affidavit. Only those facts I believe relevant to the Court's probable cause determination are included.

### III.    APPLICABLE LAW

4.    Title 18, United States Code, Section 1591, states that "whoever knowingly, in or affecting interstate or foreign commerce... recruits, entices, harbors, transports, provides, or obtains by any means, a person...knowing that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act..." shall be punished.

### II.    FACTS SUPPORTING PROBABLE CAUSE

  A.    <u>Victim 1 is found in San Rafael in an area known for prostitution and Parker is arrested by the San Rafael Police Department</u>

5.    On August 9, 2007, San Rafael Police Officer Scott Eberle was on patrol in an area known for prostitution. Officer Eberle noticed a male on a bicycle who was known to him to pay for sex with prostitutes and a female walking beside him. Officer Eberle began speaking to the female. She initially told Officer Eberle that she was 18 years old, although the Officer thought

she looked younger. Officer Eberle asked for and received consent from the female to look through her phone. While Officer Eberle was looking through the phone, there was an incoming call from phone number 510-677-2544 and the displayed name was "Money Man." He did not answer the call.

6.      In looking through the phone, Officer Eberle also saw a telephone number in the contact section of the phone for "Parents" with a 509 area code. After contacting an individual at that phone number, Officer Eberle discovered the female's name and that she was a 16-year old runaway from Washington state. This female is a minor. Accordingly, her name will not be included in this affidavit and she will hereinafter be referred to as "Victim 1."

7.      After being identified by Officer Eberle, Victim 1 began to cry and stated that she had a pimp and that he had threatened to harm her family if she did not work as a prostitute for him. She said that he drove her to San Rafael from the East Bay in a small white vehicle. Victim 1 said that her pimp told her where to walk to pick up "dates" and to charge $50 for sex.

8.      Thereafter, Victim 1 agreed to participate in a pretext phone call to her pimp, whom she called "Daddy", and who was later identified as Parker. I know from my training and experience that most pimps require that the prostitutes who work for them call them "Daddy." Victim 1 called 510-677-2544, the number associated with "Money Man" from which there had earlier been an incoming call. In summary, on the call, Victim 1 stated that she was at an apartment with three males. She said that her stomach hurt and Parker asked her what she was going to do. Victim 1 asked if he wanted her to "do them" or not. Parker said, "Just knock them out real quick." Victim 1 asked how much she should charge and later asked if she should charge $30. Parker said "I don't know. Whatever," and told Victim 1 to hurry up. Victim 1 stated that she did not want to do the act and wanted to go to Burger King to meet him. Parker said, "No, just go take care of business." Victim 1 said again that her stomach hurt and Parker said something to the effect of "Just take care of business." Then, Victim 1 said that she was going to Burger King and to meet her there. Parker agreed to meet her there.

9.      San Rafael Police officers then went, with Victim 1, into the Burger King. Officers saw a white Dodge Sundance drive into the Burger King parking lot which they believed may be driven by Victim 1's pimp. Officers stopped the car. Victim 1 was brought over to where the police has stopped Parker and positively identified him as her pimp.

10.     San Rafael Police officers conducted a search of Parker's vehicle incident to arrest. Amongst other items, officers found an empty box of condoms, three packages of lubricant, two hotel room keys, $376 in cash, and a laptop computer. The vehicle Parker was driving was registered to an individual named Janae Fletcher. In the course of my investigation, I have learned that Janae Fletcher's previous address is the same as the address on Parker's driver's license.

B.   Statement by Victim 1 to San Rafael Police Department

11.   Later in the evening on August 9, 2007, Victim 1 was interviewed by San Rafael Police officers. She said that she and a friend had met Parker through the MySpace website. From my training and experience, I know that the MySpace website is a free online social networking service that allows users to create their own profile pages. The pages can include their personal information, lists of their favorite musicians, books and movies, photos of themselves and friends, and links to pages within and outside the MySpace environment. The service also permits users to send and receive private messages with other MySpace users, and to restrict the disclosure of certain information (ie blogs and profile information) exclusively to their MySpace friends. Victim 1 said that she and her friend, who was also 16 (hereinafter "Victim 2"), ran away from their homes in Washington state to California to meet Parker. After Victim1 and Victim 2 arrived in California, Parker told the girls that they must work as prostitutes for him or that his friends would hurt their families. Victim 1 stated that she had to give all the money she made from prostituting to Parker and that he bought her food and clothing.

C.   Statement by Victim 2 to Federal Bureau of Investigation

12.   When interviewed, Victim 2 told me that she and Victim 1 ran away from Washington state to California on June 28, 2007, and arrived in Oakland, California the following day. Melvin Parker picked them up at the bus station and later brought them to the Civic Center Motel in Richmond. Parker told the victims that he wanted them to work as prostitutes for him. Victim 1 complied, but Victim 2 refused.

13.   According to Victim 2, from approximately June 29 through July 5, 2007, Victim 1 worked as a prostitute for Parker in Richmond, Oakland, and Sacramento, California. She turned over all the money she made from her "dates" to Parker. Victim 2 returned to Washington on July 4, 2007, and Victim 1 returned two days later. Victim 2 did not return to California with Victim 1 when she ran away again to California later that month.

D.   Statement by Victim 1's Guardian to Federal Bureau of Investigation

14.   When interviewed, Maria V., Victim 1's legal guardian, said that Victim 1 and Parker met through Victim 2. Maria V. said that Victim 1 and Parker communicated through MySpace and the telephone while Victim 1 was still living in Washington state. At the time Victim 1 and Parker began communicating using MySpace, Victim 1 had her age listed on her MySpace page as 16. Before running away the second time, Victim 1 changed the age on her MySpace profile to list her age as 21.

15.   According to Maria V., in June or July 2007, Victim 1 ran away from her home in Washington state to California with Victim 2 to meet Parker. The two traveled from Pasco, Washington to Oakland, California on a Greyhound bus using tickets that were paid for with a credit card in the name of Janae Fletcher. After arriving in California, Victim 1 called Maria V.

and told her that she was staying at the Civic Center Motel in Richmond, California. Victim 1 told Maria V. that she wanted to go home but was not allowed to leave. Maria V. called the Richmond Police Department and asked for their assistance in finding Victim 1. According to Maria V., at some point, the police found Victim 1 and put her on a bus to go back to Washington, but she never arrived home. Victim 1 later spoke to Maria V. and stated that "he" and a female made her get off the bus and stay in California. By email, Victim 1 told Maria V. that she need to get Parker his money because he knew where her family lived and threatened to hurt them if she didn't cooperate. According to Maria V., Victim 1 did eventually return home but then ran away a couple of weeks later.

      E.      Statement by Victim 1 to Federal Bureau of Investigation

16.    When I interviewed Victim 1, she stated that she first met Parker when he called Victim 2 and then Victim 2 handed the phone to Victim 1. Victim 1 and Parker then began communicating without Victim 2 via telephone and MySpace. Parker put "minutes" on Victim 1's cell phone so that they could speak on the cell phone rather than use Victim 1's home phone. According to Victim 1, Parker suggested that she and Victim 2 travel to California to "hang out" with him, and he offered to buy their bus tickets. Victim 1 and Victim 2 agreed.

17.    According to Victim 1, the first trip she took to California was sometime before July 4, 2007, and she stayed approximately two weeks. Once Victim 1 and Victim 2 arrived in Oakland, California, Parker picked them up from the bus stop and took them to a friend's house in El Cerrito, California. Parker then had a private conversation with Victim 2, who then told Victim 1 to put a skirt on, but did not tell her why. Parker then drove Victim 1 and Victim 2 to the "track" and made them work as prostitutes for him. Based on my training and experience, I know that the "track" is the area prostitutes walk around to try to pick up "dates."

18.    Also during the interview, Victim 1 stated that Parker and Janae Fletcher live together in Fletcher's apartment in Richmond, California. Victim 1 stated that at one point, Parker and Fletcher got in a fight and Parker hit Fletcher. Fletcher told Parker that she was going to call the police because he had a minor there. Victim 1 was scared and left the motel. She went to a nearby McDonald's restaurant and borrowed a customer's phone to call her brother in Washington. However, during the phone call, Victim 1 saw Parker coming her way and she hung up the phone. Victim 1 then went back with Parker.

19.    The second time Victim 1 ran away to California, she went alone. She left for California on approximately August 1, 2007. Parker paid cash for Victim 1's bus ticket and put it in the name of Crystal Johnson. Parker also paid for a room at the Economy Inn in San Pablo, California while Victim 1 was in California, and stayed with Victim 1 there every other night. During this trip, Parker made Victim 1 work as a prostitute in Richmond, Concord and San Rafael.

20.    During the interview, Victim 1 stated that Parker told Victim 1 how to make sure that the

"date" was not an undercover police officer, and told her to charge $50 for oral sex and $80 for intercourse. Parker provided condoms for Victim 1 to use, and also purchased cigarettes and alcohol for her. Victim 1 told Parker that she did not want to prostitute but he still made her do it. Victim 1 told me during the interview that although she would walk around the track, she was not trying to pick up dates because she didn't want to be prostituting and only had about five dates while she was in California. She said that Parker knew she didn't want to be prostituting and was getting frustrated with her. Victim 1 gave all the money she made from prostitution to Parker. Victim 1 stated that she told Parker several times that she was only 16 years old, and at one point showed him her identification card which lists her birthdate.

### IV.  CONCLUSION

21.  Based on my review of the San Rafael police reports and my interviews of witnesses, I believe that Melvin Parker, Jr. did knowingly, in or affecting interstate or foreign commerce, knowingly recruit, entice, harbor, transport, or obtain by any means, Victim 1 knowing that Victim 1 had not attained the age of 18 years and would be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591, Sex Trafficking of Children.

22.  Therefore, I respectfully submit that there is probable cause to believe that Melvin Parker, Jr. has violated Title 18, United States Code, Section 1591, Sex Trafficking of Children.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief,

*[signature]*

Martha E. Parker, Special Agent
Federal Bureau of Investigation


Sworn and subscribed to before me this  17  day of September, 2007.

*[signature]*

Honorable Elizabeth D. Laporte
United States Magistrate Judge

AO 442 (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

Northern District of California

UNITED STATES OF AMERICA
V.
MELVIN PARKER, JR.

**WARRANT FOR ARREST**

Case Number: 3 07 70545

**EDL**

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest  MELVIN PARKER, JR.
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice

charging him or her with (brief description of offense)

knowingly, in and affecting interstate or foreign commerce, recruiting, enticing, harboring, transporting, providing, or obtaining by any means, a person knowing the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

in violation of Title 18 United States Code, Section(s) 1591

Hon. Elizabeth D. Laporte
Name of Issuing Officer

United States Magistrate Judge
Title of Issuing Officer

*[Signature]*
Signature of Issuing Officer

September 17, 2007   San Francisco, CA
Date and Location

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |